## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| **TYRONE HENDERSON,** | ) | |
| **on behalf of himself and others** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:12-cv-00109-REP** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **INSTANT CHECKMATE LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### DEFENDANT INSTANT CHECKMATE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS COUNT I OF PLAINTIFF TYRONE HENDERSON'S AMENDED CLASS COMPLAINT

Defendant INSTANT CHECKMATE LLC ("IC"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Local Rule 7(f), submits this Memorandum in support of its Motion to Dismiss Count I of Plaintiff TYRONE HENDERSON'S ("Plaintiff") Amended Class Complaint (the "ACC").

## I.     INTRODUCTION

This lawsuit arises out of various alleged violations of the Fair Credit and Reporting Act (the "FCRA").  Plaintiff alleges IC is a Consumer Reporting Agency (a "CRA") which owed consumers various obligations under the FCRA.  In the original Complaint, Plaintiff alleged IC violated the FCRA by refusing to provide him with a free copy of his "consumer file", i.e., all the information on Plaintiff retained by IC.  But after reviewing IC's Motion to Dismiss the Complaint, Plaintiff realized that this allegation had no merit and prepared the ACC which alleges a handful of completely unrelated violations.

This Motion seeks to dismiss Count I of the ACC, which essentially alleges IC violated Section 1681g[1] by requiring Plaintiff to purchase a membership to its website in order to access his consumer file.  This allegation is legally deficient for the following reasons:

First, IC did not violate Section 1681g by refusing to provide Plaintiff with a free copy of his consumer file since it was not required to make free disclosures.  Similarly, IC was not required to sell Plaintiff a copy of his file since the ACC does not allege that he ever attempted to purchase it.

Second, a CRA only has an obligation to provide a consumer file where one has been requested by a consumer.  Whether or not IC had a policy of not providing consumer files is completely irrelevant if consumers never requested them.  Since the ACC asserts a claim based on this alleged policy, and does not allege that consumers actually requested copies of their files, it is deficient as a matter of law.

Third, IC's membership fee does not violate the FCRA's restriction that a CRA cannot charge a consumer more than $11.00 for providing a copy of his or her consumer file.  Here, IC was not charging consumers its membership fee for providing them with access to their consumer files.  Rather, its membership fee entitled consumers to perform "unlimited searches" concerning themselves as well as other consumers.  As such, the $11.00/consumer report restriction does not apply to IC's membership fee.

Fourth, Plaintiff's final "catch all" allegation that IC violated Section 1681j(a)(1)(C) fails as a matter of law because this section only obligated the Commission to enact regulations concerning CRA's, and did not itself impose any obligations on CRA's.  Moreover, even if the

---

[1] The term "Section" as used herein shall refer to the corresponding subsection of 15 U.S.C. § 1681.  For example, "Section 1681g" refers to "15 U.S.C. § 1681g".

Commission did enact regulations which IC supposedly violated, the ACC is deficient because it does not identify those regulations.

In addition to these four major deficiencies, the entirety of Count I should be dismissed because Plaintiff simply does not have standing to bring this claim. Because Plaintiff neither attempted to purchase his consumer report or a membership to IC's website, he does not have standing to allege IC refused to provide him with his consumer report or that IC's membership fees violated the FCRA.

## II.    FACTUAL ALLEGATIONS

The ACC alleges the following: IC is a CRA which sells background checks, including criminal records for consumers, nationwide. (ACC, ¶ 2.) On November 9, 2011, Plaintiff wrote a letter to IC requesting a free copy of his entire file and to dispute inaccurate information in its file. (ACC, ¶ 20, Ex. A.) On November 14, 2011, IC wrote Plaintiff a letter indicating it would not be providing him with a free copy of his consumer file. (ACC, ¶ 21, Ex. B.) This is the only interaction between Plaintiff and IC alleged in the ACC.

## III.    THE STANDARD OF REVIEW

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court set forth a two-step analysis to determine whether a complaint satisfies the pleading requirement of Rule 8.

First, a court must consider only the factual allegations of the complaint, as opposed to its legal conclusions and bare recitation of the elements of a claim. Fed R. Civ. P. 8(a); *Iqbal*, 129 S. Ct. at 1949 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of

his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]") (internal citation omitted).

Second, a complaint must allege facts which plead a "plausible" claim, rather than merely a "possible" claim. *Iqbal*, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 555.

Importantly, numerous cases have held that these heightened pleading standards apply to FCRA cases. *See, e.g., Adams v. LexisNexis Risk & Info. Analytics Group, Inc.*, 2010 WL 1931135 (D.N.J. May 12, 2010).

## IV. COUNT I OF THE ACC MUST BE DISMISSED BECAUSE IT IS LEGALLY INSUFFICIENT

Count I alleges IC violated Section 1681g by failing to provide Plaintiff and other members of the putative class with a consumer file without purchasing a full membership, and by failing to provide the related disclosures. (ACC, ¶ 38.) It then makes several specific allegations in parts "a" through "d" of paragraph 38, each of which is addressed below.

### A. IC's Decision Not To Produce Plaintiff's Consumer File Does Not Constitute A Violation of Section 1681g Since Plaintiff Was Not Entitled To A Free Consumer File And Plaintiff Never Attempted To Purchase His File

#### 1. IC Was Not Obligated To Provide Plaintiff With A Free Consumer File Since It Is Not A Nationwide Specialty CRA

Paragraph 38a. of the ACC alleges IC violated Section 1681g by "refusing to provide the consumer file at all". Plaintiff alleges he wrote a letter to IC on November 9, 2011 requesting a *free* copy of his consumer file:

> Please provide me a copy of my entire file with your company including a list of all companies who have requested or received my report. I am entitled to one ***free*** report every year. (ACC, ¶ 20, Ex. A (Emphasis Added).)

Plaintiff even characterized this exchange of correspondence in his original Complaint as evidence that IC failed to provide him with a *free* consumer report:

> Defendant's failure to provide a *free* annual report and related disclosures required by the FCRA violated 15 U.S.C. § 1681g as to the Plaintiff and other members of the Section 1681g class.  (Complaint, ¶ 32 (Emphasis added).)

Alas, the only FCRA violation identified in the entire Complaint was based on IC's failure to provide Plaintiff with a free copy of his consumer report and related disclosures.

There are only two types of CRA's which are required to provide a free consumer report. These CRA's are described in subsections "(p)" and "(x)" of Section 1681a, and are commonly referred to as "Nationwide CRA's" and "Nationwide Specialty CRA's" respectively.[2]  15 U.S.C. § 1681j(a)(1)(A).  A Nationwide Specialty CRA is defined by Section 1681a(x) as follows:

> The term "nationwide specialty consumer reporting agency" means a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis relating to—
> (1) medical records or payments;
> (2) residential or *tenant history*;
> (3) check writing history;
> (4) *employment history*; or
> (5) insurance claims.  (Emphasis added.)

In this case, the ACC alleges IC is a Nationwide Specialty CRA because its reports are supposedly used for "tenant and employment history uses".  (ACC, ¶ 14.)  This boilerplate allegation is deficient as a matter of law under *Ashcroft* and *Twombly* because it fails to identify any facts whatsoever which would make the allegation "plausible".  Rather, all the ACC has done is recite two of the elements required for a CRA to be considered a Nationwide Specialty CRA, i.e., that Defendant's reports are used for "tenant and employment history uses".

This deficiency is highlighted by the fact that numerous other portions of the ACC indicate Plaintiff has access to IC's website and marketing materials.  Alas, the ACC even quotes representations made from these sources at multiple locations.  (*See, e.g.*, ACC ¶¶ 7, 9, 10 and

---

[2] Because the ACC does not allege IC is a Nationwide CRA, Nationwide CRA's are not discussed further in this Memorandum.

11.) Plaintiff and/or his attorney almost certainly purchased a membership to IC's website, took numerous "screenshots" and performed various searches before filing this lawsuit. And yet the ACC does not allege a single fact in support of the naked allegation that IC's reports are used for "tenant and employment uses". For example, nowhere in the ACC are there any allegations that IC tracked when a tenant fell behind in his rent, wrote a bad check or had to be evicted. Likewise, nowhere in the ACC are there any allegations that IC tracked where consumers were employed and whether they resigned or were terminated. These allegations are not present because IC does not maintain files on a consumer's tenant or employment history, and the ACC's failure to allege any facts to the contrary makes it deficient as a matter of law. This is precisely the type of pleading of just the elements of a claim which is insufficient as a matter of law under *Ashcroft* and *Twombly*.

In conclusion, the ACC fails to adequately plead that IC is a Nationwide Specialty CRA since it does not identify any facts which make such an allegation "plausible". As such, the allegation that IC was a Nationwide Specialty CRA and thus obligated to provide free consumer reports must fail as a matter of law. As such, IC was never obligated to provide Plaintiff with a free copy of his consumer file.

> **2.** **IC Was Not Obligated To Sell Plaintiff A Copy Of His Consumer File Since He Never Attempted To Purchase It**

Section 1681j(f), entitled "Charges for certain disclosures", confirms that CRA's can require a consumer to pay a fee in exchange for providing a consumer file. *See, e.g.,* 15 U.S.C. § 1681j(f). Here, IC was never obligated to sell Plaintiff a copy of his consumer file since he never contacted ACC and attempted to purchase it. Rather, all he did was request a "free" copy of his file.

### 3.     Conclusion

If IC was not required to provide Plaintiff with a free copy of his consumer file, and IC was not required to sell Plaintiff a copy of his consumer file, IC cannot possibly have violated the FCRA by failing to provide him with a copy of his consumer file.

### B.     The Allegation That IC Violated Section 1681g By Only Allowing Consumers To View Their Files With The Purchase Of A Membership Is Not Actionable

Paragraph 38b. of the ACC alleges IC violated Section 1681g by "only allowing a consumer to read or discover the contents of their file with Defendant if the consumer first paid for a membership with Defendant's website."  However, Section 1681g(a) provides that a CRA is only obligated to provide a consumer report when that consumer has specifically requested it: "Every consumer reporting agency shall, ***upon request*** . . . clearly and accurately disclose to the consumer: (1) All information in the consumer's file . . . ."  (Emphasis added.)

Here, the ACC does not allege that consumers actually requested copies of their files. Rather, it alleges IC had a custom and practice of "only allowing a consumer to read or discover the contents of their file with Defendant if the consumer first paid for a membership with Defendant's website."  (ACC, ¶ 38.b.)  Whether or not this allegation is correct is completely beside the point, since the central issues in a claim for violation of Section 1681g(a) are (a) whether consumers requested copies of their files and (b) whether a CRA failed to provide them. For example, even if IC did, in fact, have a business practice of not providing consumer reports absent a membership, such a practice would not be actionable under Section 1681g(a) unless a consumer actually requested a copy of his file and was denied.   Since the ACC does not allege that any consumers actually requested copies of their files, the allegation that IC violated Section 1681g by failing to provide consumers with their files must fail as a matter of law.

Even if the ACC did allege consumers actually requested copies of their consumer files and IC rejected those requests, it would still be deficient as a matter of law because it fails to identify facts which would make such an allegation "plausible."  To the contrary, the facts

alleged in the ACC make such an allegation extremely "implausible" as they suggest IC did not advise consumers that they had the right to make such a request:

> Defendant does not sell or otherwise provide – to anyone – a copy of his or her consumer file.  Instead, whether the consumer makes contact by phone, mail, e-mail or on Defendant's website, the only way Defendant permits a consumer to see what is there file is to contract for a full "membership" with Defendant. (ACC, ¶ 23.)

Needless to say, it is hard to imagine that more than a handful of consumers would ever request copies of their consumer files from a CRA which did not even offer them this option.  And for the reasons discussed in Section IV, A., above, consumers who requested free copies of their consumer reports likewise would not have a claim since IC was not obligated to provide free consumer reports.  In short, even if there are consumers that somehow meet these criteria (i.e. consumers who requested the opportunity to purchase just their consumer report), they will not be even close to being numerous enough to constitute a class.

### C.    IC's Offer To Allow Consumers To Purchase A "Membership" To Its Website Does Not Violate Sections 1681j(a)(1)(C) And 1681j(f)

Paragraph 38c. of the ACC alleges IC violated Section 1681g by "charging an amount for such 'membership' that exceeded that permitted by 15 U.S.C. §§ 1681j(a)(1)(C) or 1681j(f)."

### 1.    Section 1681j(a)(1)(C)

Section 1681j(a)(1)(C)(i) required the "Commission" to provide regulations with respect to the CRA's described in Section 1681a(x):

> (i) In general.  ***The Commission shall prescribe regulations applicable to each consumer reporting agency described in section 1681a (x)*** of this title to require the establishment of a streamlined process for consumers to request consumer reports under subparagraph (A), which shall include, at a minimum, the establishment by each such agency of a toll-free telephone number for such requests.

The type of CRA described in Section 1681a(x) is a Nationwide Specialty CRA.  In other words, Section 1681j(a)(1)(C) obligated the Commission to enact regulations on Nationwide Specialty CRA's in order to streamline the process for consumers to obtain copies of their reports.

The ACC's allegation that IC charged consumers membership fees which were in excess of the amount permitted by Section 1681j(a)(1)(C) is legally deficient for the following reasons:

First and foremost, Section 1681j(a)(1)(C) only creates obligations for the Commision, not CRA's.

Second, as discussed above, IC is not a Nationwide Specialty CRA.  It is therefore not subject to whatever regulations the Commission may have propounded pursuant to Section 1681j(a)(1)(C).

Third, Section 1681j(a)(1)(C) does not indicate that there is any specific amount which a CRA can charge for a "membership".  Even if the Commission did propound regulations which somehow limited what IC could charge for its membership fees, the ACC would still be deficient as a matter of law since it does not identify the regulations, explain what the regulations required or allege facts indicating the regulations were violated.

### 2.      Section 1681j(f)

Section 1681j(f) provides in relevant part as follows:

> (f)    Reasonable charges allowed for certain disclosures
>     (1)    In the case of a request from a consumer other than a request that is covered by any of subsections (a) through (d) of this section, a consumer reporting agency may impose a reasonable charge on a consumer—
>         (A)    for making a disclosure to the consumer **pursuant to section 1681g** of this title, which charge— . . .
>             (i)    shall not exceed $8 . . . . (Emphasis added.)

In other words, when a consumer requests a consumer file (i.e., makes a request pursuant to Section 1681g), a CRA can charge no more than $11.00[3] for providing a copy of that file. Even the title of this section, "Reasonable charges allowed for ***certain disclosures***" indicates the FCRA only places limits on what a CRA can charge for "certain disclosures".

In this case, Plaintiff's allegation that the amount IC charged for a "membership" exceeds the amount permitted by Section 1681j(f) fails as a matter of law for one simple reason: Section 1681j(f) does not restrict what a CRA can charge for a membership that allows a consumer to view more than just his or her consumer report. All Section 1681j(f) prohibits is a CRA charging more than $11.00 when it produces only a copy of the consumer's report. Alas, CRA's like Lexis Nexis and Westlaw routinely charge a "membership fee" in exchange for access to information which far exceeds the information contained in a user's consumer file.

Here, the ACC clearly indicates IC's "membership fee" entitled consumers to much more than just a copy of their consumer files. For example, paragraph 9 indicates IC recommended consumers use its website to perform background checks on a variety of people including family doctors, business contacts, teachers and coaches. Paragraph 11 likewise indicates IC advised consumers its product allowed its members to make decisions about "the people in their lives". As such, it has not identified any facts indicating ICC violated Section 1681j(f).

In conclusion, Plaintiff's allegation that IC's "membership fee" violated Section 1681j fails as a matter of law because this section does not set a limit as to what a CRA can charge when it offers a consumer far more than a consumer report.

---

[3] Section 1681j(f)(1)(A)(i) provides that this amount "shall not exceed $8." However, Section 1681j(f)(2) provides that this amount may be modified based on changes to the consumer price index. The ACC alleges the FCRA currently prohibits a CRA from charging a consumer more than $11.00 for a consumer report. (ACC, ¶ 25.)

**D.      Plaintiff's Final "Catch-All" Allegations Concerning Unidentified Regulations Fail As A Matter of Law**

Paragraph 38d. of the ACC alleges IC violated Section 1681g by failing to provide "the disclosures, toll-free telephone number and other services required at 15 U.S.C. § 1681j(a)(1)(C)." As discussed in section IV, C., 1. above, Section 1681j(a)(1)(C) obligated the Commission to enact regulations on Nationwide Specialty CRA's in order to streamline the process for consumers to obtain copies of their reports.

The ACC's allegation that IC failed to provide "the disclosures, toll-free telephone number and other services" required by Section 1681j(a)(1)(C) is legally deficient for the following reasons:

First and foremost, Section 1681j(a)(1)(C) only creates obligations for the Commission, not CRA's.

Second, for the reasons discussed in section IV, A., 1. above, IC is not a Nationwide Specialty CRA. It is therefore not subject to whatever regulations the Commission propounded pursuant to Section 1681j(a)(1)(C).

Third, Section 1681j(a)(1)(C) does not indicate that a CRA is required to make any "disclosures" or provide "other service[s]". Even if the Commission did propound regulations which somehow applied to IC, the ACC would still be deficient as a matter of law since it does not identify the regulations, explain what the regulations required or allege facts indicating the regulations were violated.

Fourth, while Section 1681j(a)(1)(C) does obligate the Commission to create regulations requiring Nationwide Specialty CRA's to provide a "toll free number", Plaintiff's allegation that ICC failed to provide such a number is contradicted by the facts of the ACC. Specifically, page 2 of Exhibit B confirms IC did in fact provide Plaintiff with a toll free number in its response to

Plaintiff's request for a free consumer report.   This letter provides as follows: "For more information you can visit our website at http://www.instantcheckmate.com/ or call 1-866-490-5980 . . . ." Particularly telling is the fact that the ACC does not allege that this toll free telephone number is absent from IC's website or other marketing materials, which it is not. Rather, it simply makes the boilerplate allegation that IC failed to provide a toll-free number which is contradicted by Exhibit B to the ACC.

## V.   COUNT I OF THE ACC IS ALSO LEGALLY INSUFFICIENT BECAUSE PLAINTIFF DOES NOT HAVE STANDING TO BRING THIS LAWSUIT

In order to pursue a class action, a plaintiff must establish standing as to each claim and form of relief sought.   *Bauer v. Veneman*, 352 F.3d 625, 641 n. 15 (2d Cir. 2003).   This requirement is codified in the FCRA in Sections 1681n and o, which mandate that a consumer can only bring a claim for violation of the FCRA when the violation occurred "with respect to" that particular individual.   Thus, Section 1681n provides as follows with respect to willful non-compliance:

> § 1681n. Civil liability for willful noncompliance
> (a) In general.
> Any person who willfully fails to comply with any requirement imposed under this title **with respect to any consumer** is liable **to that consumer** in an amount equal to the sum of . . . .  (Emphasis added.)

Likewise, Section 1681o imposes the same requirement for negligent noncompliance:

> § 1681o. Civil liability for negligent noncompliance
> (a) In general.
> Any person who is negligent in failing to comply with any requirement imposed under this title **with respect to any consumer** is liable **to that consumer** in an amount equal to the sum of . . . .  (Emphasis added.)

These requirements have been recognized by the appellate courts in various FCRA cases. For example, in *White v. First American Registry*, 230 F.R.D. 365 (S.D.N.Y. 2005), the court denied the plaintiff's motion for class certification where the class representative's own inaccurate file had been corrected prior to filing the putative class action.

In this case, the only alleged violation that was "with respect to" Plaintiff was IC's failure to provide him with a copy of his consumer file and disclosures.  But as discussed above, this allegation is deficient as a matter of law.  Not a single other allegation in Count I concerns a violation which was made "with respect to" Plaintiff.

Nowhere in the ACC does Plaintiff allege he attempted to purchase a copy of his file, inquired as to the cost of obtaining a copy of his file, paid more than $11.00 for a copy of his file or purchased a membership with IC.  Alas, the only connection that he has with IC whatsoever is the fact that IC did not provide him with a *free* copy of his consumer file as requested.  Since he has not alleged any other violations of the FCRA that were with respect to him, he does not have standing to assert any claims other than his legally deficient claim that IC failed to provide him with a copy of his consumer file.

For example, Plaintiff alleges IC failed to provide him with a toll-free number.  If Plaintiff has standing to bring such a claim, then so does every other individual on the planet regardless of whether they have ever even heard of IC.  Likewise, if Plaintiff has standing to bring a claim that the amount of IC's membership fee exceeded what is permissible under the FCRA, then so do millions of other individuals who likewise never purchased a membership.  This would lead to absurd results which illustrate why the standing requirement is so important in these types of cases.

## VI.   CONCLUSION

For the reasons discussed herein, IC respectfully requests that its Motion be granted.

Dated:  May 15, 2012.                Respectfully submitted,

INSTANT CHECKMATE, LLC

By Counsel

/s/ Hanna Lee Blake
Alexander N. Lamme (VSB No. 45553)
Hanna Lee Blake (VSB No. 70026)
Counsel for Instant Checkmate LLC
WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
8405 Greensboro Drive, Suite 100
McLean, Virginia  22102
Tel: (703) 749-1000
Fax: (703) 893-8029
Email: alamme@wthf.com
Email: hblake@wthf.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2012, I served a true and correct copy of the

foregoing via the Court's electronic filing ("CM/ECF") system and First Class U.S. Mail to:

Leonard A. Bennett (VSB No. 37523)
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 930-3662
Email: Lenbennett@clalegal.com

*Counsel for Tyrone Henderson*

/s/ Hanna Lee Blake
Alexander N. Lamme (VSB No. 45553)
Hanna Lee Blake (VSB No. 70026)
Counsel for Instant Checkmate LLC
WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
8405 Greensboro Drive, Suite 100
McLean, Virginia  22102
Tel: (703) 749-1000
Fax: (703) 893-8029
Email: alamme@wthf.com
Email: hblake@wthf.com